UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMETT L. FAUGHT, ) | 1:07-CV-0023 AWI JMD HC |
| ) | |
| Petitioner, ) | |
| ) | FINDINGS AND RECOMMENDATION |
| v. ) | REGARDING PETITION FOR WRIT OF |
| ) | HABEAS CORPUS |
| ) | |
| KATHY MENDOZA-POWERS, Warden, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Sacramento County Superior Court. The trial court sentenced him to an indeterminate term of sixteen-years-to-life following his conviction for second degree murder and assault, with an enhancement for the use of a firearm. (Answer at 1; Exs. A-B.)

On November 1, 2005, Petitioner appeared before the California Board of Parole Hearings for a parole consideration hearing. The Board denied parole. (Answer at 2; Ex. C.)

Petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior Court challenging the Board's denial of parole. The court denied the petition in a reasoned opinion. (Answer at 3; Ex. D.)

1    Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. The
2 court summarily denied the petition. (Answer at 3; Ex. E.)

3    Petitioner filed a petition for review in the California Supreme Court. The court summarily
4 denied the petition. (Answer at 3; Ex. F.)

5    On January 5, 2007, Petitioner filed the instant petition in this Court. The petition raises the
6 following three grounds for relief: 1) the parole board's decision violated Petitioner's due process
7 rights because it was not supported by some evidence; 2) the parole board's continued reliance on
8 the commitment offense violated Petitioner's due process rights; and 3) Petitioner's due process
9 rights are being violated because he is being held beyond the maximum term for second degree
10 murder set forth in the California sentencing matrix.

11    On January 3, 2008, Respondent filed an answer to the petition.

12    On February 21, 2008, Petitioner filed a traverse to the answer.

## FACTUAL BACKGROUND[1]

14    On September 7, 1988, at approximately 12:30 p.m., the Sacramento County Sheriff's
15 Department received a "dead body" call. Officers responded to the west drainage canal
16 approximately one half mile north of Del Paso Road in Sacramento, California and contacted the
17 reporting person. He related that approximately one hour earlier he had arrived at the canal to do
18 some shooting with his .22 caliber rifle. He was shooting into the water when he saw something red
19 floating in it. He shot at it a couple of times and thought it sounded funny when the bullets hit it. He
20 went to investigate it. While he was pushing it over, he discovered it was a human body. He then
21 summoned law enforcement.

22    Subsequently, the officers, the fire department, and personnel with the coroner's deputy
23 established a crime scene in the area and removed the body from the water. Upon inspecting the
24 body, identification was found in one of the victim's pants pockets. The victim was identified as
25 Ms. Janet Harmon. The coroner's autopsy revealed that the cause of death was multiple gunshot
26 wounds to the head and abdomen. The ballistics report revealed that the murder weapon was a

---

[1] The facts are derived from the factual summary read into the record during Petitioner's November 1, 2005 parole consideration hearing. (Answer, Ex. C at 6-11.)

seven-millimeter-caliber rifle.

Detectives investigating the case interviewed witnesses who had observed the victim getting into a van in the early morning hours of September 6, 1988. These witnesses were able to provide a description of the van and two male occupants. One witness indicated that she had previously been approached by a man in the same van who solicited her for an act of prostitution, during which time he pulled a rifle on her. And by the evening, she observed the victim getting into the same van with the passenger being the man she had the problem with. The van's description given by witnesses matched a van that was involved in a shooting on September 6, 1988, in which two men were arrested for the charge of attempted murder.

A subsequent interview with the suspects, Petitioner and his brother, revealed that they had picked up a prostitute during the early morning hours of September 6, 1988. Petitioner was driving the van and his brother, Mark, was the passenger. Mark directed Petitioner to drive to the rice patties which he did. When they arrived, Mark said to the victim, "Bitch, get out of the van. I'm tired of it, tired of being ripped off." All three exited the van with Mark holding the seven-millimeter-caliber rifle. Mark then told Petitioner to move away from the girl, and when Petitioner did, Mark shot her at least three times. After Mark shot the victim, he handed the rifle to Petitioner and told him to shoot her. Petitioner claimed that he was in a state of shock in seeing what his brother had just done and that his brother was extremely angry. Petitioner fired the rifle in the direction of the victim, but did not know if he hit her. Mark then tore a white T-shirt in half and wrapped it around the victim's legs. Mark and Petitioner threw her body into the canal.

Petitioner claims his brother's motivation for shooting the victim was that he lost quite a bit of money by using prostitutes. Mark claimed that the prostitutes stole from him. Petitioner claimed the rifle was his and that he kept it in the back of the van unloaded. He further stated that he kept the ammunition on the engine cover up front. He never saw Mark load the rifle, but assumes he must have loaded it seconds before shooting the victim.

After the body was thrown into the canal, Mark told Petitioner to "just drive around." As they were driving, Mark began shooting the rifle at a red pickup truck, striking the occupant. He also fired a shot at a motorcycle as it was entering the freeway. A short time later, the California

Highway Patrol apprehended Petitioner and Mark.

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, at the time the petition was filed, Petitioner was confined at Avenal State Prison, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).  Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at

70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412.  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

    **A.  Grounds One, Two, and Three**

Petitioner argues that his due process rights were violated when the parole board denied him parole because the decision was not supported by some evidence. Petitioner argues that the parole board's continued reliance on his commitment offense violated his due process rights. Petitioner further argues that his rights are being violated because he is being held beyond the maximum term for second degree murder set forth in the California sentencing matrix.

These claims were presented in a petition for writ of habeas corpus to the Sacramento County Superior Court, which denied the petition in a reasoned opinion. (Answer, Ex. D.) The issues were then raised in petitions to the California Court of Appeal and California Supreme Court, which summarily denied the petitions. (Answer, Exs. E-F.) The Court of Appeal and California Supreme Court, by their "silent orders" denying the petitions, are presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claims, the Superior Court found that the Board could properly rely on the nature of Petitioner's commitment offense as one factor in denying his parole. The court also found that the nature of the offense and Petitioner's failure to fully accept responsibility for his actions constituted some evidence supporting the Board's determination. The court further found that Petitioner, whose maximum sentence was life in prison, was not entitled to parole after any certain period of time. (Answer, Ex. D at 1-3.)

"We analyze a due process claim in two steps. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006). California's parole scheme gives rise to a

cognizable liberty interest in release on parole.  Id. at 1127-28.  However, "because parole proceedings are not part of the criminal prosecution, the full panoply of rights due a defendant in a criminal proceeding is not constitutionally mandated.  Instead, the due process rights that flow from a liberty interest in parole are limited: the prisoner must be provided with notice of the hearing, an opportunity to be heard, and if parole is denied, a statement of the reasons for the denial.  In addition, due process requires that 'some evidence' support the [determination regarding parole], and that the evidence relied upon must possess 'some indicia of reliability.'  The 'some evidence' standard is satisfied if there is any reliable evidence in the record that could support the conclusion reached.  Finally, determining whether the 'some evidence' standard was met does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence."  Rosenkrantz v. Marshall, 444 F.Supp.2d 1063, 1079-80 (C.D. Cal. 2006) (citations omitted); see also Sass, 461 F.3d at 1128-29.

When reviewing a decision of the Board of Parole Hearings or the Governor regarding a prisoner's suitability for parole, the relevant inquiry is "whether some evidence supports the decision . . . that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008).  The Board and Governor both have authority to resolve conflicts in the evidence and decide the weight to be given to particular evidence, and each has broad discretion that will only be disturbed when due consideration is not given to the specified factors.  Id. at 1204.  Further, the Board and Governor may rely on the nature of the commitment offense as a basis to deny parole, but only when, considered in light of other facts in the record, the offense continues to be predictive of current dangerousness.  Id. at 1221; Cal. Code Regs., tit. 15, § 2402; see also Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007) ("[I]n some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes."); Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003) ("A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.").

Facts relevant to determining the predictive value of the commitment offense include the amount of time since the offense, the prisoner's history before and after the offense, and the prisoner's current demeanor and mental state. In re Lawrence, 44 Cal.4th at 1211, 1214, 1219, 1221.

The state court's determination that Petitioner's rights were not violated was not unreasonable. Petitioner was provided a parole consideration hearing in which he and his counsel took part. (Answer, Ex. C.) The Board also stated the reasons for the denial of parole on the record at the hearing. (Id. at 45-49.)

One reason given by the Board for denying parole was the nature of Petitioner's commitment offense. The Board identified the fact that Petitioner and his brother drove the victim to a rural area where they shot her multiple times. The Board noted that the victim was defenseless and that the motive for the killing, Petitioner's brother's general anger toward prostitutes, was trivial in relation to the crime. (Answer, Ex. C at 45-46.)

The Board also cited, among other things, Petitioner's history of alcohol abuse, his failure to sufficiently engage in self-help programs, his failure to recognize the impact the crime had on the victim, and his failure to gain insight into the causative factors of the crime. The Board stated that it wanted Petitioner to maintain his commitment to AA over a longer period of time and that it wanted him to do some victim impact work so he could better understand the effect his actions had on the victim. The Board explained that, when asked about the victim, Petitioner kept her at arm's length, only speaking of her in a detached manner as if she was a nonperson. The Board also wanted Petitioner to take more time to gain insight into the causative factors of the crime, as it was concerned by Petitioner continuing to claim that he only shot at the victim because of fear of his brother, despite the fact that, at the time he did the shooting, Petitioner was the only person who was armed. (Answer, Ex. C at 46-49.) These facts were properly considered and had some indicia of reliability. See Answer, Ex. C at 16-19, 27, 34-35; see also Cal. Code Regs., tit. 15, § 2402(b) ("All relevant, reliable information available to the panel shall be considered in determining suitability for parole."); Cal. Code Regs., tit. 15, § 2402(c) (stating that the enumerated unsuitability factors are only set forth as general guidelines).

The Board's reliance on Petitioner's commitment offense did not violate his due process

rights because, when considered in light of his failure to appreciate the impact of the crime on the victim and his failure to gain insight into the causative factors of the crime, it was still reasonably predictive of his current dangerousness.  Further, the nature of Petitioner's commitment offense, his lack of appreciation for the impact on the victim, and his lack of insight into the causative factors of the offense constituted some evidence that Petitioner posed an unreasonable risk to public safety. See In re Shaputis, 44 Cal.4th 1241, 1258-61 (2008) (affirming Governor's denial of parole based on premeditated nature of commitment offense and lack of insight, despite prisoner's many years of laudatory work reports, discipline-free record, participation in many rehabilitative programs, and acknowledgment that crime was wrong); Cal. Code Regs., tit. 15, § 2402(b) ("Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.").  Petitioner's due process rights were also not violated by subjecting him to a sentence longer than the term identified in the matrix of base terms, as the regulations did not entitle him to a parole date based solely on the matrix.  Cal. Code Regs., tit. 15, § 2281(a) (2005) ("Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.").

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   October 31, 2008**            /s/ John M. Dixon
                                        UNITED STATES MAGISTRATE JUDGE